# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SUSAN OLIVIA HART, *et al.*,

               Plaintiffs,

    v.

GOVERNMENT EMPLOYEES
INSURANCE COMPANY *d/b/a
Geico*,

            Defendant.

No. 4:21-CV-00859

(Chief Judge Brann)

## MEMORANDUM OPINION

### FEBRUARY 10, 2022

## I.    BACKGROUND

In 2021, Susan Olivia Hart, on behalf of herself on all similarly situated employees, commenced this civil action against Government Employees Insurance Company ("GEICO") alleging violation of the Fair Labor Standards Act ("FLSA"), the Pennsylvania Minimum Wage Act, and the Pennsylvania Wage Payment and Collection Law.[1]

Hart alleges that during the relevant period—from May 2018 through the date of the complaint—she was employed by GEICO as a Region 1 Adjuster working in the State College, Pennsylvania area.[2] During the relevant period, GEICO paid its Region 1 Adjusters for 7.75 hours of work per day, based on an eight-and-one-half-

---

[1]    Doc. 1.

[2]    *Id.* ¶¶ 10-11.

hour workday, with forty-five minutes deducted for an unpaid lunch break.[3] Despite this schedule, Hart typically worked from 8 a.m. until 5:30 to 6:30 p.m. without taking a meal break.[4] Hart and similarly situated employees were directed by GEICO to enter only 7.75 hours of work per day to avoid overtime pay.[5]

GEICO allegedly implemented "company-wide policies and business practices, carried out through intimidation tactics and implied adverse employment consequences" to pressure Region 1 Adjusters to enter only 7.75 hours of work per day, even if the adjuster worked in excess of 7.75 hours.[6] GEICO instructed its supervisors to inform "Region 1 Adjusters that 7.75 hours [of work] per day was sufficient if" the adjusters "were working hard and doing their job" and thereby reinforced the notion that it was better for an adjuster's career not to report any excess hours worked.[7]

During the relevant period GEICO allegedly had actual knowledge through "employee complaints, text messages, emails, internal employee chat or messaging programs, and other employee monitoring systems that GEICO's time sheet system and the content thereof was not accurate" and that Hart and other Region 1 Adjusters typically worked through their unpaid lunch period and worked in excess of forty

---

[3]    *Id.* ¶¶ 14-15.
[4]    *Id.* ¶¶ 12-13.
[5]    *Id.* ¶ 15.
[6]    *Id.* ¶ 16.
[7]    *Id.* ¶ 17.

hours per week.[8] GEICO nevertheless permitted the adjusters to work in excess of forty hours per week without paying those adjusters proper compensation.[9]

After GEICO filed an answer to the complaint, in July 2021, Hart file a motion to conditionally certify an FLSA class.[10] Accompanying that motion are sworn declarations from Hart and opt-in plaintiff Frank Thai that provided further factual averments in support of the notion that class certification is appropriate.[11]

Hart and Frank attest that individuals employed by GEICO with titles such as Auto Damage Adjuster I, Auto Damage Adjuster II, Auto Damage Adjuster III, Residential Damage Adjuster I, Residential Damage Adjuster II, Residential Adjuster III, Catastrophe Adjuster I, Catastrophe Adjuster II, and Catastrophe Adjuster III "performed substantially similar job duties under a common" compensation plan that was created by GEICO.[12] They further assert that the primary job duties for these employees include: contacting customers to set up damage inspections; communicating with customers regarding the claims process and the status of their claims; inspecting property or vehicles to evaluate the extent of any loss; negotiating with customers on the amount of loss; setting up and approving

---

[8]   *Id.* ¶ 18. *See id.* ¶ 19.
[9]   *Id.* ¶¶ 19-24.
[10]   Doc. 16.
[11]   Docs. 17-1, 17-2. The Court discusses only the declarations made by Hart and Thai, but notes that, in her reply brief, Hart includes similar declarations from Terry Lowery, William Simanovich, and Andrew Fitzgerald. *See* Docs. 26-1, 26-2, 26-3.
[12]   Doc. 17-1 ¶ 4; Doc. 17-2 ¶ 2.

rentals; traveling to repair shops to negotiate and issue payments; and handling claim and repair paperwork.[13]

Hart and Thai both worked through their 45 minute unpaid lunch period, and have spoken with "many other" Region 1 Adjusters who likewise worked through their lunch breaks and worked in excess of 40 hours per week.[14] These adjusters were nevertheless pressured by GEICO to enter only 7.75 hours of compensable work time per day, despite working more than 7.75 hours per day.[15] On rare occasions GEICO authorized overtime pay when Region 1 Adjusters were directed to service additional GEICO customers, but even then GEICO did not pay the adjusters for all compensable hours worked.[16]

Based on this information, Hart seeks initial class certification, arguing that the evidence and averments are sufficient at this stage to conclude that Hart is similarly situated to other Region 1 Adjusters.[17] Specifically, Hart asserts that the allegations demonstrate that Hart and other Region 1 Adjusters: performed similar job duties for GEICO; were paid first on a salary basis, and then on an hourly basis; worked in excess of forty hours per week; had a forty-five minute lunch break deducted from their hours worked despite ordinarily working through their meal periods; were pressured by GEICO to report fewer than forty hours worked per

---

[13]   Doc. 17-1 ¶ 5; Doc. 17-2 ¶ 3.
[14]   Doc. 17-1 ¶¶ 7-10; Doc. 17-2 ¶¶ 5-8.
[15]   Doc. 17-1 ¶¶ 11-13; Doc. 17-2 ¶¶ 9-11.
[16]   Doc. 17-1 ¶ 16; Doc. 17-2 ¶ 14.
[17]   Doc. 17.

week, despite the fact that GEICO knew the adjusters often worked in excess of forty hours per week; and were paid less than owed under the FLSA based on GEICO's failure to pay for hours worked in excess of a forty hour workweek.[18] Because all adjusters had similar duties and were generally coerced by GEICO to work in excess of forty hours per week without being paid for those hours, Hart asserts that her motion for conditional certification should be granted.[19]

GEICO responds that the motion should be denied, as Hart is not similarly situated to other putative class members.[20] GEICO asserts that adjusters have different work habits and work in different settings and in areas with different population densities.[21] Moreover, GEICO asserts that there is no evidence of a company policy or practice of refusing to pay adjusters for overtime, nor is it feasible to determine whether supervisors knew that adjusters were underreporting their hours—or felt pressured to do so—without conducting a particularized assessment of each individual's claims.[22] Moreover, GEICO argues that claims related to working off the clock are poorly suited to class certification, given the individualized nature of such claims.[23]

---

[18] *Id.* at 10-11.
[19] *Id.* at 11-12.
[20] Doc. 22.
[21] *Id.* at 20.
[22] *Id.* at 20-22.
[23] *Id.* at 18-19, 22-24.

Hart has filed a reply brief, and the motion is now ripe for disposition.[24] For the following reasons, Hart's motion for conditional certification will be granted.

## II.   DISCUSSION

The FLSA permits an action to be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."[25] In an FLSA action, "the existence of a collective action depends upon the affirmative participation of opt-in plaintiffs."[26] "Courts are [therefore] called upon to decide whether those who purport to join the collective action are 'similarly situated' as intended by the statute,"[27] and "the burden is on the plaintiffs to establish that they satisfy the similarly situated requirement" during the class certification process.[28]

In an FLSA case brought on behalf of a putative class, district courts typically evaluate the propriety of certification at two junctures, utilizing a "two-step certification process."[29] "The first step, so-called conditional certification, requires a named plaintiff to make a modest factual showing—something beyond mere speculation—to demonstrate a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members."[30] This language makes clear that, at the

---

[24]   Doc. 26.
[25]   29 U.S.C. § 216(b).
[26]   *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016).
[27]   *Id.*
[28]   *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 537 (3d Cir. 2012).
[29]   *Halle*, 842 F.3d at 224.
[30]   *Id.* (internal quotation marks omitted).

first step, "courts do not review the underlying merits of the action."[31] As courts have emphasized, "[t]he burden in this preliminary certification is light because the risk of error is insignificant: should further discovery reveal that the named positions, or corresponding claims, are not substantially similar the defendants will challenge the certification and the court will have the opportunity to deny final certification."[32] "To make a determination at this initial stage, courts generally look to the pleadings and affidavits of the parties,"[33] "and the initial determination usually results in conditional certification."[34]

"The 'sole consequence' of conditional certification is the dissemination of court-approved notice to potential collective action members."[35] "Conditional certification, therefore, is not a true certification, but rather an exercise of a district court's discretionary authority to oversee and facilitate the notice process."[36] "While conditional certification is discretionary, the Supreme Court has recognized its importance. A district court's early intervention in the preparation and distribution of notice to potential participants serves legitimate purposes, including avoidance of

---

[31] *Sloane v. Gulf Interstate Field Servs., Inc.*, No. 4:16-CV-01571, 2017 WL 1105236, at *6 (M.D. Pa. Mar. 24, 2017).

[32] *Chung v. Wyndham Vacation Resorts, Inc.*, No. 3:14·CV·00490, 2014 WL 4437638, at *2 (M.D. Pa. Sept. 9, 2014) (internal quotation marks omitted).

[33] *Id.*

[34] *Cambridge v. Sheetz, Inc.*, No. 1:17-CV-1649, 2018 WL 10467411, at *2 (M.D. Pa. Feb. 13, 2018) (internal quotation marks omitted).

[35] *Halle*, 842 F.3d at 224 (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)).

[36] *Id.*

a multiplicity of duplicative suits and establishing cut-off dates to expedite disposition of the action."[37]

"Generally, after conditional certification has been granted . . . individuals file notices providing their written consent to participate in the collective action" and "the parties conduct certification-related discovery."[38] At the conclusion of discovery, the parties proceed to the more stringent second stage, "final certification, [where] the named plaintiffs bear the burden of showing that the opt-in plaintiffs are 'similarly situated' to them for FLSA purposes."[39] "Being 'similarly situated' means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA."[40] "Courts will consider a variety of factors in reaching this determination" including "the factual and employment settings of the individual plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, the degree of fairness and procedural impact of certifying the action as a collective action, and whether plaintiffs have made the appropriate filings with the EEOC."[41]

### A.    Whether Class Should be Conditionally Certified

As to the question of whether the proposed class should be conditionally certified, the Court concludes that the evidence and allegations are sufficient to meet

---

[37] *Id.*
[38] *Id.* at 225.
[39] *Id.* at 226.
[40] *Id.* (ellipsis and internal quotation marks omitted).
[41] *Id.* (internal quotation marks omitted).

Hart's "modest factual showing" that a nexus exists "between the manner in which [GEICO's] alleged policy affected . . . her and the manner in which it affected the proposed collective action members."[42]

Hart and Thai both attest that Region 1 Adjusters performed substantially similar job duties during the relevant period and were paid under similar compensation plans.[43] They both regularly worked through their lunch periods and in excess of forty hours per week, as did many Region 1 Adjusters with whom they have spoken.[44] Despite the hours worked, Hart, Thai, and other adjusters were allegedly pressured by GEICO to enter fewer than forty hours of work into their time sheets to avoid receiving overtime pay.[45] GEICO exerted such pressure by creating a "company culture" that emphasized those who worked in excess of forty hours per week were not hard workers and risked "a poor workplace reputation, negative performance reviews, and . . . additional negative workplace consequences."[46]

These declarations and averments therefore establish that, as a general matter, Hart and other adjusters performed the same work, often worked in excess of forty hours per week, and were pressured to report fewer hours worked so that GEICO

---

[42] *Id.* at 224 (internal quotation marks omitted).
[43] Doc. 17-1 ¶¶ 4-5; Doc. 17-2 ¶ 2-3.
[44] Doc. 17-1 ¶¶ 7-10; Doc. 17-2 ¶¶ 5-8.
[45] Doc. 17-1 ¶¶ 11-13, 16; Doc. 17-2 ¶¶ 9-11, 14.
[46] Doc. 17-1 ¶ 13; Doc. 17-2 ¶ 11.

would not have to pay them overtime. This is sufficient to demonstrate, at this stage, that Hart is similarly situated to other putative class members.[47]

GEICO argues that factual variations between adjusters—including the hours worked, workload, location, and supervisors' potential knowledge of their hours worked—militates against granting Hart's motion, and GEICO points to several of its own affidavits countering the assertions presented by Hart.[48] However, these arguments go to the merits of the case, rather than the question of whether conditional certification should be granted, and are not relevant at this time.[49]

---

[47] *See, e.g., Yang v. Somchai & Co. Inc.*, No. 19-CV-12742, 2022 WL 131132, at *2-3 (D.N.J. Jan. 14, 2022) (finding allegations sufficient to establish that plaintiff was similarly situated to others where two other employees had similar experiences and plaintiff "was able to 'observe and talk with' his colleagues about their jobs and learned that they also worked in excess of 40 hours a week"); *Messenger v. Cabot Oil & Gas Corp.*, No. CV 3:19-308, 2021 WL 2530614, at *5 (M.D. Pa. June 21, 2021) (conditionally certifying class where plaintiff "presented evidence that the putative members performed substantially similar job duties operating vacuums on Cabot well pads, were paid a day rate and classified as independent contractors, and were not paid overtime"); *Viscomi v. Diner*, No. CV 13-4720, 2016 WL 1255713, at *5 (E.D. Pa. Mar. 31, 2016) (conditionally certifying class based on three affidavits that asserted "the alleged [unfair] policies were uniformly applied to potential opt-in plaintiffs").

[48] Doc. 22 at 15-16, 20-21.

[49] *See Adams v. QVC, Inc.*, No. CV 21-0646, 2021 WL 5906242, at *4 (E.D. Pa. Dec. 14, 2021) (conditionally certifying class despite defendant having "submitted affidavits from six individuals who would undoubtedly qualify as potential class members" attempting to undermine plaintiff's assertions); *Messenger*, 2021 WL 2530614 at *5 (conditionally certifying class despite "alleged discrepancies in job duties" between employees); *Cambridge v. Sheetz, Inc.*, No. 1:17-CV-1649, 2018 WL 10467411, at *2 (M.D. Pa. Feb. 13, 2018) (holding that defendant's actions in submitting seven affidavits to counter motion to certify "invites us to consider the merits of Plaintiffs' claims and asks that we perform the type of conclusive class determination that is only appropriate at the *second* tier of analysis, after discovery. We simply are not at that stage yet"); *Chung v. Wyndham Vacation Resorts, Inc.*, No. 3:14-CV-00490, 2014 WL 4437638, at *3 (M.D. Pa. Sept. 9, 2014) (noting that "where plaintiffs have adduced sufficient evidence to meet step one's extremely lenient standard for conditional certification, evidence offered by the defendant purporting to show plaintiffs are not similarly situated to absent class members, while significant after discovery and during the step-two analysis, does not compel denial of conditional certification" (internal quotation marks omitted)).

Similarly, GEICO argues that there is no evidence of a company-wide policy or practice and, in the absence of such a policy or practice, the Court would need to delve into individualized inquiries of every class member to determine whether they felt intimidation or pressure to falsify their work times.[50] Hart and Thai assert, however, that such policies and practices do exist.[51] Such an assertion is sufficient to meet Hart's burden; direct evidence of any alleged policy or practice is something that would be developed during discovery, and it is premature to require further evidence at this stage of the certification process.[52]

Finally, although GEICO cites to several cases that it asserts supports the notion that certification is generally inappropriate when claims address overtime pay, many of the cases to which it cites are inapposite, as they address certification in contexts other than step one conditional FLSA certification.[53] And while GEICO cites to some cases that denied conditional certification because there were too many

---

[50]   Doc. 22 at 21-22.
[51]   Doc. 17-1 ¶¶ 12-13; Doc. 17-2 ¶¶ 10-11.
[52]   *C.f. Finefrock v. Five Guys Operations, LLC*, 344 F. Supp. 3d 783, 790-91 (M.D. Pa. 2018) (finding plaintiffs' assertions sufficient to certify class despite defendant's argument that it lacked "a uniform compensation policy," and that plaintiffs were "unable to articulate how [defendant] sets compensation and have not identified anyone, or submitted a declaration from anyone, outside 'their district' that was discriminated against").
[53]   *See Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178 (3d Cir. 2019) (examining whether final certification was appropriate); *Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183 (11th Cir. 2009) (same); *Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456 (S.D.N.Y. 2011) (addressing motion to decertify class at step two); *Reed v. County of Orange*, 266 F.R.D. 446 (C.D. Cal. 2010) (same).

individual variations regarding whether employees were paid for overtime work,[54] courts routinely conditionally certify classes for cases that center on overtime pay.[55]

The Court concludes that the latter cases are persuasive, particularly given the factual allegations at issue here. There is no dispute that GEICO automatically deducts a forty-five-minute break period from adjusters' pay for lunch, regardless of whether the employee actually takes a break, meaning that claims of overtime work are less individualized here than they may be in other contexts. Furthermore, given the light burden of proof at this stage, Hart and Thai's assertions that adjusters commonly work through their lunch period and, thus, in excess of forty hours per week, is sufficient at this stage to conditionally certify the class. After the commencement of discovery, the evidence may well demonstrate that claims are too individualized for final certification. That, however, is a question for another day;

---

[54] *Eng-Hatcher v. Sprint Nextel Corp.*, No. 07 CIV 7350, 2009 WL 7311383 (S.D.N.Y. Nov. 13, 2009); *Diaz v. Elecs. Boutique of Am., Inc.*, No. 04-CV-0840E(SR), 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005); *Lawrence v. City of Philadelphia*, No. 03-CV-4009, 2004 WL 945139, at *2 (E.D. Pa. Apr. 29, 2004).

[55] *See Yang*, 2022 WL 131132 at *2-3 (granting conditional certification based on allegations that plaintiff "and other employees worked in excess of 40 hours a week and without overtime compensation"); *Adams*, 2021 WL 5906242 at *3-4 (conditionally certifying class based on allegation that plaintiff, as "an hourly, non-exempt employee, was only paid for her time after she was completely logged into the computer systems, numerous software applications and phone system and was not paid for the time she expended in doing so or the time spent logging out at the end of each shift"); *Messenger*, 2021 WL 2530614 at *5 (conditionally certifying class based on allegations that "putative members performed substantially similar job duties operating vacuums on Cabot well pads, were paid a day rate and classified as independent contractors, and were not paid overtime"); *Vanorden v. Lebanon Farms Disposal, Inc.*, No. 1:17-CV-1310, 2018 WL 2323789, at *1 (M.D. Pa. Apr. 4, 2018) (class conditionally certified for claims that, *inter alia*, plaintiff "was not compensated for daily post-shift duties required by supervisors, and witnessed other drivers and loaders perform post-shift duties" despite those drivers being ineligible for overtime pay).

because Hart has adduced evidence going "beyond mere speculation"[56] that she is similarly situated to the putative class, her motion for conditional certification will be granted.[57]

## B.   Contours of the Class and Proposed Order

Having concluded that certification is appropriate, the Court next turns to the question of how large the proposed class should be, and what conditions should be included in the Order granting conditional certification. As an initial matter, GEICO asserts that any potential class should be limited only to adjusters in Pennsylvania, as the Court lacks personal jurisdiction over class action members employed by GEICO outside of Pennsylvania.[58] Hart agrees, based upon the cases cited by GEICO, that jurisdiction is present only for GEICO employees within the Commonwealth of Pennsylvania, and has therefore "modified her motion seeking to conditionally certify and facilitate notice to those GEICO Region 1 Adjusters [who] lived or worked for GEICO within the Commonwealth of Pennsylvania during the relevant 3-year FLSA recovery period."[59] Accordingly, the Court will conditionally certify the class to include only GEICO employees within Pennsylvania during the relevant period.

---

[56]   *Halle*, 842 F.3d at 224.
[57]   *Cf. Chung*, 2014 WL 4437638 at *2-3 (conditionally certifying class despite allegations that defendant only "generally" prohibited salespeople from reporting all hours worked and would only "occasionally" adjust employees' reported hours downward if the hours worked exceeded forty hours per week).
[58]   Doc. 22 at 25.
[59]   Doc. 26 at 1 n.1.

GEICO next contends that Hart's proposed order should be modified so that: (1) GEICO has ten business days to produce a list of potential claimants; (2) the eligibility date is limited to three years from the date the notice is due; and (3) a fixed date is set to return the opt-in notice.[60] Hart does not oppose these requests[61] and, consequently, those modifications will be incorporated into the Order that will issue in this matter.

Finally, GEICO asserts that delivery of the notice should be limited to mail—with email serving as a backup—and GEICO should not be required to disclose home or cell phone numbers of potential claimants, which it asserts is unnecessary.[62] Hart responds that this is an outdated position, and production of telephone numbers is important to contact potential class members and promotes judicial efficiency.[63] The Court believes that home addresses and email addresses are sufficient to adequately apprise potential class members of this action. Should such contact methods prove ineffective at reaching potential class members, Hart may seek modification of the Order to permit telephonic contact. GEICO will therefore be directed to provide only the relevant employees' home and email addresses, and Hart may use both methods to contact potential class members.

---

[60]   Doc. 22 at 25-26.
[61]   Doc. 26 at 8 n.5.
[62]   Doc. 22 at 26.
[63]   Doc. 26 at 8-9.

## III.    CONCLUSION

For the foregoing reasons, the Court concludes that conditional certification of the putative class is appropriate. Consequently, Hart's motion to certify the class will be granted.

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge